506 A.2d 495

Matthew Jefferson, III, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs August 26, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Jeffrey W. Whiteko,* Assistant Public Defender, for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, March 14, 1986:

Matthew Jefferson, III, petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) which denied him administrative relief from a Board parole revocation order. That order revoked his parole as a technical parole violator and mandated that he be returned to prison to serve twelve months on backtime.

The record presents the following facts which are relevant. Jefferson was sentenced in the Court of Common Pleas of Fayette County to a term of five to ten years following his conviction of the offense of Robbery.[1] The Board granted him parole on that sentence and, on August 16, 1979, he was released from the State Correctional Institution at Pittsburgh (SCI-Pittsburgh). The Board revoked his parole on July

---

[1] 18 Pa. C. S. §3701.

9, 1981 following his conviction for Burglary[2] in Fayette County Common Pleas Court for which he received a sentence of two to four years. He was last paroled by the Board on these sentences on October 23, 1983[3] at which time he was released from SCI-Pittsburgh to a parole plan in Uniontown. One of the special conditions of parole imposed upon Jefferson at the time of his release was that he submit to random drug urinalyses.[4]

On January 10, 1984, Jefferson submitted a urine sample to his parole agent which tested positive for cocaine, cocaine metabolites and tetrahydrocannabinol (THC).[5] At an administrative conference with his parole agent, he admitted using cocaine and marihuana and was subsequently admitted to outpatient drug therapy. While his attendance at the outpatient

[2] 18 Pa. C. S. §3502.

[3] The Board had first paroled Jefferson on his Robbery sentence on October 9, 1982, after he had completed serving the backtime mandated by the Board. However, he was not released from confinement at that time but paroled to begin serving the balance of the minimum term of his detainer sentence. See Counts v. Pennsylvania Board of Probation and Parole, 87 Pa. Commonwealth Ct. 277, 279 n.3, 487 A.2d 450, 452 n.3 (1985). Jefferson's detainer sentence was the two to four year Burglary sentence which was the reason for his 1981 parole revocation. Upon completion of the minimum term of that sentence, on October 23, 1983, the Board granted him parole on that sentence and he was released from confinement. From October 9, 1982, until his release from confinement on October 23, 1983, he was on "constructive parole" on his original five to ten year Robbery sentence. See Debnam v. Pennsylvania Board of Probation and Parole, 71 Pa. Commonwealth Ct. 572, 573, 455 A.2d 297, 298 (1983).

[4] Section 23 of the Parole Act, 61 P.S. §331.23, specifically authorizes the Board to impose such special conditions of parole as it deems necessary with respect to particular parolees in order to effectuate the purpose of parole. See also 37 Pa. Code §63.5.

[5] THC is the psychomimetrically active principle of cannabis or marihuana. Dorland's Illustrated Medical Dictionary 1352 (26th Ed. 1981).

program was satisfactory, he submitted another urine sample on April 5, 1984 which tested positive for THC. While Jefferson denied any drug usage since March, 1984, his parole agent issued him a written warning which advised him that further drug usage could result in the revocation of his parole. On May 10, 1984, he submitted another urine sample which tested positive for THC. As a result of the positive urinalysis of the May 10, 1984 sample, as well as his subsequent arrest on new criminal charges,[6] the Board lodged its warrant and detainer against him and charged him with violating general parole condition 5A.[7] He remained confined at the Fayette County Jail.

The Board afforded Jefferson a parole Violation Hearing at the Fayette County Jail on August 22, 1984 before a Board hearing examiner. His parole agent offered the original laboratory report of the urine sample of May 10, 1984 to support the alleged technical parole violation. The report was admitted over objection by Jefferson's counsel, Jefferson denied drug use since March, 1984, and the Board, on October 1, 1984, revoked his parole and ordered him recommitted as a technical parole violator to serve

---

[6] On May 23, 1984, Jefferson was arrested by troopers of the Pennsylvania State Police and charged with Retail Theft (18 Pa. C. S. §3929) after he allegedly removed without paying for a typewriter valued at $319 from a Montgomery Ward store at the Laurel Mall in Uniontown. He was convicted of Retail Theft on October 2, 1984 in Fayette County Common Pleas Court following a jury trial. As a result of this conviction, on November 26, 1984, the Board revoked his parole as a convicted parole violator and recommitted him to prison to serve an additional twelve months on backtime. That revocation order is not at issue here.

[7] General parole condition 5A requires that parolees "abstain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of The Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. §§780-101—780-144) without a valid prescription." 37 Pa. Code §63.4(5) (i).

twelve months on backtime for violation of general parole condition 5A. A petition for administrative relief was filed with the Board pursuant to 37 Pa. Code §71.5(h) which was denied by the Board on November 28, 1984 and this appeal followed.

Jefferson's contention here is that the Board's revocation order is invalid, being based upon inadmissible hearsay, the laboratory report.

We disagree.

We recognize, of course, that our limited scope of review of a Board parole revocation order is to determine whether necessary findings are supported by substantial evidence, an error of law committed or whether any of the parolee's constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Cox v. Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985).

Jefferson initially contends that the hearing examiner erred in admitting the challenged laboratory analysis report into evidence by failing to make a specific finding of good cause on the record so as to deny him his right of confrontation and cross-examination of an adverse witness. We note that it has been long settled that hearsay evidence is properly admissible in parole revocation proceedings, subject to a finding of good cause to deny the parolee his due process right to confront and cross-examine adverse witnesses. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782 n.5 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972); *Sinwell v. Pennsylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 429, 406 A.2d 597 (1979). *See generally,* Annot. 11 A.L.R. 4th 999 (1982). Where offered hearsay evidence is objected to by a parolee, it may only be admitted into evidence upon a specific finding of good cause made on the record by the hearing examiner not to allow confrontation and cross-examination. 37 Pa. Code 71.2(16); *Tyson v. Penn-*

*sylvania Board of Probation and Parole*, 84 Pa. Commonwealth Ct. 326, 479 A.2d 52 (1984). Our review of the transcript of the August 22, 1984 Violation Hearing clearly shows that the hearing examiner made such a finding on the record. The relevant portion of the exchange between Jefferson's parole agent, defense counsel, and the hearing examiner is as follows:

Agent Lynn: The violation is violation of Condition 5A, you shall refrain from unlawful possession or sale of narcotics or dangerous drugs and abstain from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act without a valid prescription. The specific charge in this incident is that on 5-10-84 a urine sample was obtained from Mr. Jefferson and the urine sample was submitted to the Regional Clinical Laboratories, 154 W. 9th Street, Erie, Pennsylvania and a return slip was in was [sic] returned from the lab stating that the urine sample proved positive for THC. I enter into evidence a copy of the original urine slip.

Mr. McElhinny: (hearing examiner) Alright. I'll mark this Exhibit State one. Let me for the record [. . .]

Attorney Whiteko: (defense counsel) I'll object to that.

Mr. McElhinny: Alright, okay, I was just explain, okay, ah. I'll overrule your objection ah there is good cause to admit this ah drug screen ah in that . . . .the Board has a contract ah with ah the ah Regional Clinical Laboratories or [sic] do so at this time. It is the Board's position that they will accept ah the analysis of the drug screen, the drug screen analysis from this laboratory and that is my authority for cause ah to accept this.

This exchange shows that the examiner clearly found good cause to admit the laboratory report over defense counsel's objection. We do not pass on the question of the adequacy of the cause found by the examiner as that question is not before us. Jefferson only contends that the examiner did not make a finding of good cause, he does not challenge the adequacy of that finding. Since a specific finding of good cause was made by the examiner following defense counsel's objection, there was no error in admitting the laboratory report into evidence. See *Razderk v. Pennsylvania Board of Probation and Parole*, 76 Pa. Commonwealth Ct. 176, 463 A.2d 111 (1983); *see also, United States v. Penn*, 721 F.2d 762 (11th Cir. 1983).

Jefferson argues further, however, that the Board violated his rights to due process when it based its revocation order solely upon hearsay evidence. We are aware that a parole revocation order cannot be based entirely upon hearsay evidence without violating due process. *Grello v. Pennsylvania Board of Probation and Parole*, 83 Pa. Commonwealth Ct. 252, 477 A.2d 45 (1984); *see also, Commonwealth v. Greenlee*, 263 Pa. Superior Ct. 477, 398 A.2d 676 (1979) (probation revocation).

While it is true that the laboratory report may be termed hearsay,[8] we do not believe that it is inadmissible hearsay for revocation purposes in the context of this case, and in light of statutory provisions aimed at broadening admissibility of evidence in

---

[8] We are quite aware that admissibility of the laboratory report was not authorized under the Uniform Business Records as Evidence Act, Act of July 9, 1976, P.L. 586, 42 Pa. C. S. §6108(b), for failure to produce a custodian or other qualified witness to attest to the reliability of the report and without explanation for the absence of such a witness. *Whitmore v. Pennsylvania Board of Probation and Parole*, 94 Pa. Commonwealth Ct. 569, 504 A.2d 401 (1986).

parole revocation proceedings. Thus the second paragraph of Section 22 of the Act of August 6, 1941 (Parole Act), P.L. 861, *as amended*, 61 P.S. §331.22, reads as follows:

> §331.22 *Paroles on board's own motion; applications and hearings; notice to district attorney and court*
>
> . . . . .
>
> In granting *and revoking* paroles, and in discharging from parole, the members of the board acting thereon *shall not be required to personally hear or see all the witnesses and evidence submitted to them for their action, but they may act on report submitted to them* by their agents and employees, *together with any pertinent and adequate information furnished to them* by fellow members of the board *or by others.* (Emphasis added.)

We see in these provisions a clear legislative intent to allow the Board to rely upon the presentations of their agents, of course, within acceptable limits. The agent is a public servant and one who knows most about the parole activities of the parolee. We believe that the "report submitted to them [the Board] by their agents and employees" may include a laboratory report from an entity whose reports, as in this case, have been found to be reliable.

We note that decisions of Federal courts and of the courts of sister states permit revocations of probation and parole based upon such laboratory reports. *See United States v. Penn,* 721 F.2d 762 (11th Cir. 1983); *Wykoff v. Resig,* 613 F. Supp. 1504 (N.D. Ind. 1985) (unconfirmed positive EMIT test sufficient ground upon which to base prison disciplinary sanction consistent with due process); *Smith v. State,* 250 Ga. 438, 298 S.E.2d 482 (1982) (court approved trial court's finding that the tests were reliable and accurate and

admissible into evidence); *State v. Rivera,* 116 Ariz. 449, 569 P.2d 1347 (1977) (revocation of probation based upon laboratory report indicating the presence of morphine in the probationer's urine sample).

Accordingly, we will affirm.

#### ORDER

Now, March 14, 1986, the Order of the Pennsylvania Board of Probation and Parole at Parole No. 0712-K, dated November 24, 1984, which denied administrative relief to Matthew Jefferson, III, and affirmed the Board's order of October 1, 1984 which recommitted him as a technical parole violator to serve twelve months backtime, is hereby affirmed.