513 A.2d 1139

William Powell, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs June 26, 1986, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Scott F. Breidenbach,* Assistant Public Defender, for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, August 14, 1986:

This parole revocation case presents the important and recurring question of the admissibility, in a parole revocation administrative hearing, of a laboratory report for the purpose of establishing a drug abuse technical violation by a parolee.

Petitioner William Powell seeks review of an order of the Pennsylvania Board of Probation and Parole denying his application for administrative relief from a board action which recommitted him as a technical parole violator to serve his unexpired term of 14 months and 3 days.

After the board had released the petitioner in April of 1985 from incarceration under a sentence of 1-1/2 to 3 years imposed for attempted burglary, the petitioner was arrested in June of 1985 on a board warrant for technical violations of General Parole Conditions No. 3A, failure to report as instructed, and No. 5A, failure to abstain from the use of controlled substances.

At a parole revocation hearing held at Graterford State Correctional Institution, Montgomery County, the petitioner admitted the reporting failure violation, for which the presumptive range of recommitment is 3 to 6 months, 37 Pa. Code §75.4. However, through counsel, the petitioner contested the evidence relating to the drug abuse violation, for which the presumptive range of recommitment is 5 to 12 months for a single offense, 37 Pa. Code §75.4.

The determinative evidence of the drug abuse violation was an unsigned computer printout report from Healtheast Laboratories, a private laboratory, referring to a urine specimen taken from the petitioner, stating his name, and confirming that the urine drug screen was positive for listed controlled substances. (Appended to this opinion is a reproduction of the barely legible report copy supplied as the original record exhibit.) The report referred to Mr. Polgar, the petitioner's previous parole agent, and also contained the following comment:

THIS LABORATORY IS APPROVED BY THE PA DEPT OF HEALTH TO PERFORM ANAL-YSIS FOR DRUGS SUBJECT TO ABUSE. TOXICOLOGY IS STAFFED BY FIVE PEO-

PLE ALL OF WHOM MAY HAVE, IN SOME FASHION, BEEN INVOLVED IN THE PROCESSING OF THIS SPECIMEN.

At the hearing before the examiner, however, no person from the laboratory appeared to support the content of the report or otherwise to authenticate it. The petitioner attacks the admission of the laboratory report as evidence necessary to support the drug abuse technical violation. He identifies the central issue in this case to be whether the board's finding as to the occurrence of that violation was thus based upon inadmissible hearsay and therefore not supported by substantial evidence.

In a parole revocation proceeding, a parolee retains due process rights, but with the right to confront and cross-examine adverse witnesses being subject to modification upon a specific finding of good cause for such a denial. *See Gagnon v. Scarpelli,* 411 U.S. 782 n.5, 93 S.Ct. 1756, 1759 n.5 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604 (1972).

Under board regulations pertaining to technical violation hearings, the absence of witnesses necessary to establish the violation is allowable only "when the Examiner finds on the record good cause for not allowing such confrontation." 37 Pa. Code §71.5(d). The same regulation permits sole reliance upon documents *only* with respect to criminal parole violation matters, *see, e.g., Anderson v. Pennsylvania Board of Probation and Parole,* 91 Pa. Commonwealth Ct. 486, 497 A.2d 947 (1985).

Where the substantive content of a laboratory report is involved with respect to a technical parole violation, the business records hearsay exception may be pertinent. As this court pointed out recently in *Whitmore v. Pennsylvania Board of Probation and Parole,* 94 Pa. Commonwealth Ct. 569, 504 A.2d 401 (1986), the Judi-

cial Code, in 42 Pa. C. S. §6108(b) provides that such a record shall be competent evidence

> if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

In this case, the examiner admitted the laboratory record, explicitly concluding that "good cause is established not to allow confrontation of those who may have conducted the test." The examiner noted that the report names the pathologist and laboratory director; in addition, he specifically found that the laboratory was approved by the Pennsylvania Department of Health to perform such analyses. In justification of his good cause finding he stated:

> Toxicology is staffed by five people all of whom may have in some fashion been involved in the processing of this specimen. The Hearing Examiner did not believe it would be feasible to subpoena all five of these people who may have conducted this test and therefore, found good cause not to allow confrontation.

Thus, as in *Jefferson v. Pennsylvania Board of Probation and Parole*, 95 Pa. Commonwealth Ct. 560, 506 A.2d 495 (1986), the record contains a specific finding of good cause with respect to not requiring confrontation but, unlike that case, the petitioner here has definitely raised an issue as to the adequacy of such alleged good cause.

Complete examination of the record of testimony shows that the hearing examiner, apparently in good faith, pursued quite assiduously the matter of good cause by putting leading questions to the parole agents

concerning the processes involved in obtaining and submitting urine specimens and, finally, concerning justification for the absence of witnesses. The pertinent passage went as follows:

Examiner: Alright. It's sent through the mail to a state approved laboratory, is that correct?

Agent: That's correct.

Attorney: I object to that, because I don't think we've established that it's a state approved laboratory.

Examiner: I don't need to do that . . . I take official notice that it is . . . and that's the process. They wouldn't be doing these urines if they weren't state approved. That's the first issue.

Attorney: It's not appropriate to take official notice of that.

Examiner: Why isn't it . . . I'm not testifying to it, I'm taking official notice of the fact that exists. It's a process that exists. And I know for a fact that it happens. That since I was part of the bidding process prior to becoming a Hearing Examiner, I know for a fact that three bids must be given on all issues before the State. And then, after the bid is accepted by the State, that Lab then must be approved by the Pennsylvania Department of Health and it's a process I know about and I'm not testifying to that, I'm just saying I know that to be a fact. Now, the second issue is, if you know something about the examination that goes on once the urine is taken . . . let me ask you. Does one person alone do that test, or is it more than one person?

Agent: More than one person.

Examiner: More than one person. And why is it more than one person, because they do what?

Agent: Numerous tests.

Examiner: They do numerous tests. Alright. Now, the numerous tests are conducted by various chemists who are hired by this laboratory, is that correct?

Agent: That's correct.

Agent: That's correct.

Examiner: Alright. Now, in order to have confrontation, it would mean that the Board would have to subpoena each individual that conducted that test. Is that correct?

Agent: That's correct.

Agent: That's correct.

Examiner: Alright. Now, where is the Lab located?

Agent: In Allentown, Pennsylvania.

Examiner: And that means, that you would have to bring about ten people down from Allentown to talk about one urine. Is that correct?

The examiner's last question, concerning "ten people," was never answered because of an intervening objection by counsel. Accordingly, the hearing examiner's above-quoted finding on good cause did not refer to the involvement of *ten* laboratory workers, but used the number *five* which the examiner could have derived only from the internal statement in the report, also quoted above.

The foregoing record of testimony clearly establishes that the examiner's finding concerning official approval of the laboratory was based upon the personal experience of the examiner in his former position, rather than upon proper judicial notice, as would be applicable with respect to a notorious official fact. Obviously, a judge's personal knowledge and judicial notice are two different matters.

With respect to testimony necessary to make the laboratory report competent under the business records

exception, this record contains no testimony from any "custodian or other qualified witness" who could testify to the identity and mode of preparation of the report. The examiner elicited testimony from the parole agents on that score, but the agents evidenced no firsthand knowledge which could qualify them as such witnesses. Thus the record contains only hearsay as a basis for invoking the business records exception to the hearsay rule.

As to the adequacy of the good cause finding, this record reveals a similarly circular approach. The examiner determined that there was good cause for not requiring the presence of any witness from the laboratory; such a witness, obviously, could have (1) directly supported the content of the urinalysis report or (2) could have testified as a "qualified witness" for the invocation of the business records exception provision. However, the examiner drew the key basis for good cause—the alleged necessity of obtaining the presence of *five* laboratory workers—from within the questioned report itself.

The board's action therefore is founded upon the troublesome logic of relying upon hearsay evidence to authorize the reception of hearsay, as to both the "good cause" exception and the business records exception.

Moreover, the alleged necessity of calling five laboratory workers as witnesses does not suffice as an adequate basis for the good-cause determination when 42 Pa. C. S. §6108(6) would permit the report to be substantiated by a *single* qualified witness, and no reason appears for failure to obtain such a lone witness.

In *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983), the federal court of appeals, in a similar case, accepted an unsupported laboratory urinalysis report on the basis of an unsworn letter, also hearsay, which indicated that five different people worked on each laboratory test. That federal court decision therefore was

based upon the same circular reasoning which confronts us here, and is therefore not logically persuasive. However, in *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), where the United States Supreme Court in a probation case dealt with a similar problem, that Court stated that the petitioner's

> greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. . . . [W]e did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes, including affidavits, depositions and documentary evidence.

411 U.S. at 782 n.5.

Recently in *Jefferson v. Pennsylvania Board of Probation and Parole,* 95 Pa. Commonwealth Ct. 560, 506 A.2d 495 (1986), where this court approved the use of a laboratory drug screen report without a laboratory witness, upon a good cause determination which was unchallenged as to the adequacy of the cause, the opinion noted a possible additional rationale by quoting the second paragraph of Section 22 of the Act of August 6, 1941 (Parole Act), P.L. 861, *as amended,* 61 P.S. §331.22, which reads as follows:

> §331.22 Paroles on board's own motion; applications and hearings; notice to district attorney and court
>
> . . . .
>
> In granting *and revoking* paroles, and in discharging from parole, the members of the board acting thereon *shall not be required to personally hear or see all the witnesses and evidence submitted to them for their action, but they may act on report submitted to them* by their agents and employees, *together with any pertinent and ade-*

*quate information furnished to them* by fellow members of the board *or by others.*

95 Pa. Commonwealth Ct. at 567, 506 A.2d at 498-9 (Emphasis added in *Jefferson*).

When we note that the board itself, sensitive to the constitutional cautions of *Morrissey* and *Gagnon,* does not seek to rely upon documentary evidence *per se* in technical parole violation proceedings, 37 Pa. Code §71.5(d), and also note the close relationship between section 22 of the Parole Act, above quoted in part, and the business records exception provision, 42 Pa. C. S. §6108(b), then reasonable and proper evidentiary principles for the admission of laboratory reports become apparent.

1. To establish that a laboratory issuing a pertinent drug screen report is one officially approved by the board for that purpose, the board's own business records necessarily contain an appropriate memorial of such approval. Under the business records exception, the board document establishing the current approval of the relevant laboratory, or a proper copy of it, 42 Pa. C. S. 6109(b), can be competent evidence if supported by the testimony of a board custodian or other board employee, including a parole agent, able to testify to the approval document's identity and its origin in the regular course of business of the board.

2. To admit a necessary laboratory report without witness confrontation, the board's own good-cause exception regulation should continue to be applied and obeyed because of its constitutional soundness. To be admissible on that basis, without a "qualified witness" under the business records exception rule, the laboratory report should contain indicia of regularity and reliability greater than that to be seen on the report appended to this opinion, which, on its face, could be merely the product of some home computer printer.

The letterhead of the approved laboratory, the signature of a known and responsible member of its staff, or some other mark of reliability, is necessary to keep the matter within "acceptable limits", *Jefferson,* 95 Pa. Commonwealth Ct. at 567, 506 A.2d at 499.

3. To provide an adequate basis for a good-cause determination dispensing with confrontation, this court cannot rely upon a bootstrap approach derived solely from the content of the questioned document itself. Determined not to usurp the factfinding function of the board or its examiners, this court necessarily refrains from setting boundaries on the factual elements of good cause, aside from our previous disapproval of arbitrary evidentiary "policies". *Razderk v. Pennsylvania Board of Probation and Parole,* 76 Pa. Commonwealth Ct. 176, 463 A.2d 111 (1983).

In the present case, because of the absence of substantial evidence to support the finding as to violation of General Parole Condition No. 5A, the board's decision must be vacated because of that aspect of the recommitment, and the record remanded for a new order applying the presumptive range of recommitment for the violation of Condition No. 3A, as set forth in 37 Pa. Code §75.4, and, if the board shall recommit for a longer term, for justification of the deviation as required by 37 Pa. Code §75.3(c).

## ORDER

Now, August 14, 1986, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is vacated and the record is remanded for a new order consistent with this opinion.

Jurisdiction relinquished.

Judge PALLADINO dissents.